

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-08-153-CV

IN THE INTEREST OF R.L.A. AND
E.A.O., CHILDREN

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In one issue, Appellant Charolette A. ("Mother") complains that the trial court erred when it denied her motion to strike a petition in intervention. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

At age fourteen, R.L.A. made an outcry of sexual abuse by her stepfather, E.A.O.'s biological father.[2] R.L.A.'s outcry triggered the children's removal and placement into foster care by the Department of Family and Protective Services ("Department"), which filed a suit for conservatorship and termination of parental rights in September 2006.[3]

On February 11, 2008, E.A.O.'s foster parents (the "Foster Parents")[4] filed a petition in intervention, seeking to terminate Mother's parental rights to E.A.O. Two days later, E.A.O.'s attorney ad litem also filed a petition to terminate Mother's parental rights to E.A.O., on the same grounds presented by the Foster Parents. On February 29, Mother filed a motion to strike the Foster Parents' petition, complaining that their petition was not timely filed, that she lacked sufficient time to propound discovery, that the intervention would

---

[2] E.A.O.'s father's parental rights were terminated by the trial court in June 2007, after he filed an affidavit for voluntary relinquishment.

[3] Mother has four children, but only R.L.A. and E.A.O. were the subjects of the March 2008 trial. Mother's other two children were born during the pendency of the March 2008 trial. R.L.A. was fourteen years old and E.A.O. was six years old when the Department filed its petition.

[4] Although R.L.A. and E.A.O. had initially been placed with the same foster parents, because of R.L.A.'s psychological issues, including demonstrating sexual inappropriateness with younger children and being committed twice to a psychiatric facility because of suicidal threats, E.A.O.'s foster parents requested that R.L.A. be removed from their home.

2

complicate the case by an excessive multiplication of issues, and that intervention was not essential to protect their interests.

The trial court denied Mother's motion after a hearing on March 5, stating,

> Since we're going to hear the termination—the issue of termination anyway on March 17th, the Court—I'm going to allow the petition to intervene. I am, however, going to order very expedited discovery. I will give the parties until . . . Tuesday. And then [Foster Parents] . . . will have three days to respond. All responses due by the 14th.

On March 12, the Department dropped termination from its petition.

At trial, the jury found that Mother's parental rights to E.A.O. should be terminated and that the Foster Parents should be named her permanent managing conservators. The jury found that permanent managing conservatorship of R.L.A. should be awarded to the Department and that Mother and R.L.A.'s biological father should be named R.L.A.'s permanent possessory conservators. The trial court entered judgment on the jury's verdict.

### III. Discussion

In Mother's sole issue, she complains that the trial court erred by denying her motion to strike the Foster Parents' petition in intervention.

3

**A. Standard of Review**

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. We review a trial court's denial of a motion to strike intervention for an abuse of discretion. *In re N.L.G.*, 238 S.W.3d 828, 829 (Tex. App.—Fort Worth 2007, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *See id.* at 829–30 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 240–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986)).

When the trial court strikes a petition in intervention, an abuse of discretion occurs if (1) the intervenors could have brought the same action, or any part thereof, in their own names; (2) the intervention will not complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost essential to effectively protect the intervenors' interest, which may be legal or equitable. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). The flip-side of this rule is that a trial court abuses its discretion if it *grants* a petition in intervention when (1) the intervenors could *not* have brought the same action, or any part thereof, in their own names; (2) the intervention *would* complicate the case by an excessive

4

multiplication of issues; and (3) the intervention is *not* almost essential to effectively protect the intervenors' interest. *See id.*

## B. Analysis

Mother does not contest that the Foster Parents met the first portion of the test stated above.[5] Instead, she complains, as she did to the trial court, that the Foster Parents' petition should have been denied because their petition complicated the case by multiplying the issues, was not essential to protect their interests, and was not timely filed.[6]

### 1. Multiplication of Issues

Mother argues that when the Foster Parents filed their petition, the Department "had already effectively abandoned any attempt to terminate" her parental rights, and therefore, the Foster Parents' intervention "immediately

---

[5] Mother instead complains that the Foster Parents could have and should have brought a case in their own names, as they would have had physical possession of E.A.O. for the twelve months required for standing by October 2007. *See N.L.G.*, 238 S.W.3d at 831 (holding no abuse of discretion when trial court allowed foster parents to intervene because they had standing).

[6] Mother also now complains that there was no evidence presented at the hearing to support the petition. However, as here, the parties did not dispute the Foster Parents' standing at the hearing, the trial court acknowledged that the attorney ad litem had filed a petition to terminate Mother's parental rights to E.A.O., and the Foster Parents' attorney attempted to explain to the trial court why the Foster Parents waited until February 2008 to file their petition—all information upon which the trial court could base its decision on the issues presented here.

multiplied the issues" before the court and confused the issues by adding the termination issue, the issue of the Foster Parents' appointment as conservators, and the implied issue of adoption.

However, E.A.O.'s attorney ad litem filed a petition to terminate Mother's parental rights two days after the Foster Parents filed their petition to intervene, requesting that the Foster Parents be appointed E.A.O.'s managing conservators and seeking termination on the same grounds presented by the Foster Parents.[7] Therefore, these issues would have had to be addressed at trial regardless of the Foster Parents' intervention.

In addition to the termination grounds, the Foster Parents requested adoption. They argue that testimony about their proposed adoption of E.A.O. could not have confused the issues at trial, that such testimony pertained to E.A.O.'s best interest, and that, "[i]f anything, it provided clarification and answered the unspoken question the jurors surely had: 'What will happen to this child in the long run if we choose this placement?'" We agree, as prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest—one of the issues put before the jury by E.A.O.'s

_____

[7] That is, endangerment, abandonment, failure to comply with court-ordered provisions for the child's return to the parent, constructive abandonment, and the child's best interest.

6

attorney ad litem and by the Foster Parents—and some of the non-exclusive factors the factfinder may consider in determining best interest include the plans for the child by the individuals seeking custody and the stability of the home or proposed placement.[8]  *See* Tex. Fam. Code Ann. § 263.307(a) (Vernon 2008); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

We conclude that because there was no excessive multiplication of issues, the trial court did not abuse its discretion by allowing the Foster Parents to intervene, and we overrule this portion of Mother's sole issue.

### 2. Protection of Intervenors' Interests

Mother also asserts that the intervention was not essential to protect the Foster Parents' interests and that the intervention was redundant, because shortly after their petition in intervention was filed, E.A.O.'s attorney ad litem filed his own petition for termination of Mother's parental rights and sought to place E.A.O. permanently with the Foster Parents.

The Foster Parents respond that when they filed their petition in intervention, no other party, including E.A.O.'s attorney ad litem, had requested termination of Mother's parental rights to E.A.O.[9] *Cf. In re D.K.*, 148 S.W.3d

---

[8] Additionally, the jury and trial court were not required to decide the issue of adoption at the trial.

[9] Although the Department had listed grounds for termination of parental rights in its original petition, at the hearing on Mother's motion to

7

692, 695 (Tex. App.—Beaumont 2004, no pet.) (concluding that trial court did not abuse its discretion by granting motion to strike petition in intervention because Department had already petitioned for termination of parental rights so intervention was not necessary to protect foster parents' interests). They argue that if they had not been allowed to intervene, they would not have been permitted to participate in any pretrial settlement discussions, to call their own supporting witnesses, or to fully inform the jury of their future intention to provide permanency to E.A.O. if they were awarded conservatorship.

At the time of the hearing, the trial court could not have known how the Foster Parents' interests and E.A.O.'s interests as expressed by her attorney ad litem would align at trial or whether the Foster Parents would otherwise be able to protect their interests in seeking managing conservatorship of E.A.O. if they were not allowed to participate.[10] Therefore, we cannot say that the trial court

---

strike, the Department's counsel stated to the trial court that "at no time had the Department changed the principal goal to termination," and the Department dropped termination from its petition before trial.

[10] Although the Foster Parents and E.A.O.'s attorney ad litem acknowledged at trial that their interests were aligned, E.A.O.'s attorney ad litem called only Mother and the children's court-appointed special advocate as witnesses in his case-in-chief. In the Foster Parents' case-in-chief, both foster parents testified, and they called E.A.O.'s first grade teacher and E.A.O.'s counselor as witnesses. Without the Foster Parents' intervention, we cannot say that either or both foster parents would have been invited to testify or that E.A.O.'s teacher or counselor would have been called to provide context to the jury about E.A.O.'s educational and emotional progress.

abused its discretion by allowing the Foster Parents to intervene, and we overrule this portion of Mother's sole issue.

### 3. Timeliness

Finally, Mother contends that the filing of the petition for intervention was untimely and harmed her because she had an insufficient time to investigate the Foster Parents' witnesses—the case was filed on September 19, 2006, and the final dismissal date was March 22, 2008. She complains that although the Foster Parents had legal standing in October 2007, they waited an additional four months to file their petition, and that the trial court gave the parties only six days to propound discovery and an additional three days to respond.

The Foster Parents respond, as they did at the hearing on Mother's motion to strike, that they "took action and filed their intervention as soon as they realized the Department fully intended to remove E.A.O. and place her with R.L.A. in a questionable relative placement in Alabama." They argue that the trial court had the discretion to order an expedited discovery period as a less restrictive alternative to striking them from the suit and that Mother was not harmed because discovery was propounded by Mother and answered in full prior to the trial date. E.A.O.'s attorney ad litem, who also filed a brief in this appeal, adds (as he did at the hearing on the motion to strike) that at the time of the intervention, Mother's attorney had not propounded any discovery, and

9

that the sole example cited by Mother as the harmful result of expedited discovery, the use of E.A.O.'s teacher as a witness, does not show any harm.[11]

Even though the Foster Parents could have intervened earlier than they did, the trial court had the discretion to determine whether to allow them to intervene and whether to impose an expedited discovery period. And, under the circumstances presented to it at the hearing, we cannot say that the trial court abused its discretion by deciding to deny Mother's motion to strike and to allow the Foster Parents to remain in the suit. Therefore, we overrule this final portion of Mother's sole issue.

## IV. Conclusion

Having overruled Mother's sole issue on appeal, we affirm the trial court's judgment.[12]

---

[11] E.A.O.'s teacher testified that when E.A.O. first joined her class, she had a hard time interacting with other children and adults and was academically at a beginning kindergarten level—it was revealed by another witness that prior to E.A.O.'s removal, her biological father had home-schooled her. Because of E.A.O.'s low academic level, she had to repeat first grade. E.A.O.'s teacher testified that all she knew of E.A.O.'s history was that she came from Alabama and that the Foster Parents were E.A.O.'s foster parents, but that she did not know why E.A.O. was in the care of Child Protective Services or know all of the facts or issues in the case. She testified that her understanding of the case was that the Foster Parents were trying to gain custody of E.A.O., and that she had been told that by her principal and by the attorneys.

[12] During the pendency of this appeal, the Department filed an agreed motion for disposition regarding R.L.A. with this court, requesting that we affirm the portion of the judgment appointing it R.L.A.'s permanent managing

10

PER CURIAM

PANEL: MCCOY, DAUPHINOT, and GARDNER, JJ.

DELIVERED: April 2, 2009

---

conservator and appointing Mother R.L.A.'s permanent possessory conservator because "[n]o controversy or dispute exists in this appeal between [Mother] and the Department regarding the Department's appointment of permanent managing conservator of R.L.A." Having affirmed the trial court's judgment in its entirety, we need not address this motion further.